**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 29, 2013**

# In the Court of Appeals of Georgia

A13A0204. FORD v. THE STATE.

MILLER, Judge.

Following a jury trial, David Ford was convicted of three counts of child molestation (OCGA § 16-6-4 (a) (1)). Ford appeals from the denial of his motion for new trial, contending that (1) OCGA § 16-6-4 is unconstitutionally vague; (2) the trial court erred in allowing a victim/witness advocate to accompany the victim to the witness stand and to sit in front of the jury at the victim's feet while she testified; and (3) the trial court erred in allowing the jury to hear perjured or misleading testimony. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that the first victim, who was eleven years old at the time of trial, was Ford's niece.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

When the first victim was eight years old, she went over to Ford's house in Decatur County, Georgia to get some medicine for an earache. While she was there, Ford put a blanket over her, put his hand in her shorts and scratched her private part for a few minutes.

The second victim was Ford's stepdaughter, who sometimes slept with her mother and Ford. One night, when the second victim was eleven or twelve year's old, she woke up on Ford's side of the bed. Ford had his arm around the second victim, and his erect penis was pressed up hard against her rear end. Ford was "moaning and groaning," and telling the second victim to "touch me here, touch me there."

On other occasions, the second victim woke up in the middle of the night or in the morning, Ford pulled the covers back and he rubbed her back or stomach. Ford also touched the second victim's breast and waistband with his hand. When the victim was fifteen or sixteen, Ford came into her room one night and put a vibrator on her nightstand. Ford told the second victim that "this would help."

The third victim was a friend of Ford's stepdaughter. When the third victim was thirteen years old, she went over to Ford's house for a girls' sleepover. That night, the third victim got sick, so she slept in the bed in Ford's stepdaughter's room, while the other girls slept in the living room. The next morning, when the third victim

2

woke up, Ford was sitting on the side of the bed in his briefs and he was rubbing the third victim's side up and down from the top of her back down to her legs. Ford told the third victim "good morning, Beautiful" or "good morning, Princess." The third victim then ran into the living room and told Ford's stepdaughter and another girl what happened.

1. Ford contends that OCGA § 16-6-4 (a) (1) is unconstitutionally vague and violates due process. We disagree.

OCGA § 16-6-4 (a) (1) pertinently provides that "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" Although the Georgia Supreme Court generally addresses constitutional questions, it is not necessary to transfer Ford's appeal because the law is well settled, and this issue has already been resolved adversely to Ford. See *McCord v. State*, 248 Ga. 765, 766 (285 SE2d 724) (1982); *Veasey v. State*, 234 Ga. App. 795, 796 (3) (507 SE2d 799) (1998). The child molestation statute is definite and certain in its meaning, and does not

violate due process. See *McCord*, supra, 248 Ga. at 766. Accordingly, the trial court properly denied Ford's motion for a new trial on this ground.

2. Ford contends that the trial court erred in allowing a victim's advocate to accompany the first victim to the witness stand and sit by her in front of the jury while she testified. We discern no error.

When the first victim took the stand to testify at Ford's trial, the trial court cleared the courtroom of all spectators, pursuant to OCGA § 17-8-54, with the exception of a victim advocate who accompanied the first victim to the witness stand and sat on the floor next to the first victim while she testified. The trial court carefully observed the advocate's presence and demeanor during the first victim's testimony and saw no inappropriate or prejudicial conduct or behavior.

The trial court has broad discretion in controlling the trial of a case, and has a great deal of latitude in the examination of young witnesses. See *Gonzalez v. State*, 310 Ga. App. 348, 351 (3) (714 SE2d 13) (2011). Moreover, this Court has held that a trial court does not abuse its discretion in allowing a victim-witness advocate to sit with the victim during testimony. See id.

4

Ford argues that the victim advocate was not within the group of people authorized to remain in the courtroom under OCGA § 17-8-54,[2] which pertinently provides that

> [i]n the trial of any criminal case, when any person under the age of 16 is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, and court reporters.

Contrary to Ford's contention, OCGA § 17-8-54 protects the interest of the child witness, not the defendant, and a trial court's failure to follow the statute does not violate a defendant's rights. See *Driggers v. State*, 295 Ga. App. 711, 716 (3) (673 SE2d 95) (2009). Moreover, no evidence in the record shows that the victim advocate improperly influenced the first victim's testimony. See id. at 716-717 (3). Consequently, Ford has not shown that the trial court abused it discretion in allowing the advocate to sit with the first victim during her testimony.

---

[2] Without citation to any authority, Ford also argues that allowing the advocate to sit with the first victim violated his rights to effective assistance of counsel, confrontation, due process, and a fair trial. Ford waived these grounds as they were neither raised nor ruled upon in the trial court. See *Rogers v. State*, 290 Ga. 401, 411 (5) (721 SE2d 864) (2012).

3. Ford contends that the trial court erred in allowing a rebuttal witness to give perjured or misleading testimony. We disagree.

Ford's wife, who is the second victim's mother and the first victim's aunt, testified at his trial. On cross-examination, Ford's wife testified on cross-examination that she left her bookkeeping job after fourteen years because she was "finally in a financial position . . . to stay at home." Ford also took the stand at his trial and testified that his wife quit work because they were financially-stable.

After the defense rested, the president of the company where Ford's wife worked testified as a rebuttal witness for the State. The company president testified that he spoke to Ford's wife in April 2011 about bookkeeping inconsistencies. The company president further testified that Ford's wife could not explain the inconsistencies, and that she resigned later that day. The company president concluded his testimony by stating that "it was one of those situations where you're either going to resign or we're going to let you go. That's the scenario." Subsequently, at Ford's motion for new trial hearing, the company president testified that he never told Ford's wife that she had a choice of either being fired or resigning.

Although Ford argues that the company president's trial testimony was perjured, he asserted no perjury objection at trial, consequently this claim has not

6

been preserved for appellate review. See *Brown v. State*, 291 Ga. 750, 753 (3) (733 SE2d 300) (2012). Moreover, the trial court heard testimony from the company president both at trial and at the motion for new trial hearing, and this Court will not second guess the trial court's determination that Ford presented no credible evidence of any misleading testimony. See *Varnadoe v. State*, 227 Ga. App. 663, 666 (4) (490 SE2d 517) (1997).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*